UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| GOLD COAST SWIMMING POOLS, INC., on behalf of itself and all others similarly situated, | ) ) ) ) | CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE No. _____ |
| POOL CORPORATION, SCP DISTRIBUTORS LLC, and SUPERIOR POOL PRODUCTS LLC, | ) ) ) ) | |
| Defendants. | ) | |

## NATURE OF THE ACTION

1.      This is an antitrust class action arising from a conspiracy, in violation of Section 2 of the Sherman Act, to monopolize the market for pool products sold in the United States and to block potential new entrants into the market.  Plaintiff brings this action on behalf of itself individually, and on behalf of a proposed class of entities that purchased pool products directly from any defendant (those direct purchasers defined herein as the "Class") between January 1, 2003 and the present (the "Class Period").

2.      Defendants Pool Corporation ("Pool Corp"), SCP Distributors LLC ("SCP") and Superior Pool Products LLC ("Superior") (collectively "Defendants") conspired and utilized anticompetitive practices to acquire and maintain monopoly power in the pool product market. The pool product market includes residential and commercial swimming pool and leisure products.

3.      As a direct and proximate result of the monopoly conspiracy alleged herein, Defendants prevented competition in the market for pool products by significantly raising the

costs incurred by its rivals thereby lowering sales, increasing prices and reducing the number of choices available to consumers for pool products.  This conduct injured Plaintiff and the Class in their business and property.

## PARTIES

4.      Plaintiff Gold Coast Swimming Pools, Inc. is a New York corporation with its principle place of business located at 44 Sea Cliff Ave., Glen Cove, New York 11542.

5.      Defendant Pool Corporation is a Delaware corporation with its principle place of business located at 109 Northpark Boulevard, Covington, Louisiana 70433.

6.      Defendant SCP Distributors LLC is a Delaware corporation with its principle place of business located at 109 Northpark Boulevard, Covington, Louisiana 70433.

7.      Defendant Superior Pool Products LLC is a Delaware corporation with its principle place of business located at 4900 East Landon Drive, Anaheim, California 92807.

## AGENTS AND CO-CONSPIRATORS

8.      The acts alleged against Defendants in this Complaint were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of Defendants' businesses or affairs.

9.      Various persons and/or firms not named as defendants herein may have participated as co-conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof.

10.     Each Defendant acted as the principal, agent, or joint venturer of, or for, other Defendants with respect to the acts, violations, and common course of conduct alleged by Plaintiff.

## JURISDICTION AND VENUE

11.     This action is brought under Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover treble damages and reasonable attorney fees from Defendants for the injuries sustained by Plaintiff and members of the Class by reasons of Defendants' violations of Section 2 of the Sherman Act, 15 U.S.C. § 2.

12.     Jurisdiction of this Court is founded on 15 U.S.C. § 15 and 28 U.S.C. §§ 1331 and 1337.

13.     Venue is proper in this judicial District pursuant to 15 U.S.C. § 15(a) and 22 and 28 U.S.C. § 1391 because during the Class Period one or more of the Defendants resided, transacted business, were found, or had agents in this District, and part of the events giving rise to Plaintiffs' claims occurred and a substantial portion of the affected interstate trade and commerce described below, has been carried out, in this District.

14.     This Court has personal jurisdiction over each Defendant because, among other things, each:  (a) transacted business in this District; (b) directly or indirectly sold and delivered pool products in this District; (c) has substantial aggregate contacts with this District; and/or (d) engaged in an illegal anticompetitive conduct that was directed at, and had the intended effect of causing injury to, persons and entities residing in, located in, or doing business in this District.

## RELEVANT MARKET

15.     There are over nine million residential pools in the United States, and over 250,000 commercial pools operated by hotels, country clubs, apartment buildings, municipalities, and others.  In 2010, the distribution of pool products was an estimated $3 billion industry in the United States.

16.     The relevant product market is the Pool Product Distribution Market.  "Pool

Products" are the equipment, products, parts or materials used for the construction, renovation, maintenance, repair or service of residential and commercial swimming pools. Pool Products include, among other goods, pumps, filters, heaters, covers, cleaners, steps, rails, diving boards, pool liners, pool walls, and "white goods" (the parts necessary to maintain pool equipment). Pool Products do not include pool toys or games, or products used solely for landscaping or irrigation, Olympic-style pools, or pools used in commercial water parks.

17.     Pool Products are designed and manufactured specifically for residential and commercial swimming pools. There are no close substitutes for Pool Products, and no other products significantly constrain their pricing.

18.     Pool distributors, such as PoolCorp, purchase Pool Products from manufacturers, warehouse them, and then resell those products to pool builders, pool retail stores and pool service and repair companies (collectively, "Pool Dealers" or "Dealers"). Pool Dealers then sell the Pool Products to the ultimate consumer: owners of residential and commercial pools.

19.     Manufacturers of Pool Products consider wholesale distributors to be a unique and essential channel for the efficient distribution of their products. Distributors purchase and warehouse significant volumes of Pool Products throughout the year, allowing manufacturers to operate their factories year-round notwithstanding the seasonal nature of the pool industry.

20.     Distributors also provide one-stop shopping, timely delivery and the extension of credit to thousands of Dealers, thereby providing Dealers and manufacturers with significant transactional efficiencies. Additionally, distributors often help manufacturers administer their Dealer rebate and warranty programs, and provide expertise to answer Dealers' product-related questions.

21.     While manufacturers make a small amount of direct sales to larger Dealers, they cannot easily expand their operations into distribution because of the costs, their lack of expertise in distribution, and the difficulty of obtaining products to distribute from competing manufacturers.  Distributors are the only available source of Pool Products for the vast majority of Dealers, which are small mom-and-pop operations that do not have the inventory size or resources to purchase Pool Products directly from manufacturers.  Dealers that buy direct from manufacturers are not permitted by the manufacturers to participate more broadly in the wholesale distribution market and sell Pool Products to other Dealers.

22.     The relevant geographic market is the Pool Product Distribution Market in (1) the United States, or, in the alternative, (2) numerous local geographic markets contained therein, including, among others: (a) Alabama; (b) California; (c) Florida; (d) Louisiana; (e) Missouri; (f) New York; (g); Oklahoma; (h) Tennessee; and (i) Texas.

## FACTUAL BACKGROUND

### I.     The Pool Product Distribution Market

23.     The Pool Products market is generally very fragmented.  There are over 100 manufacturers that produce a small number of product lines, such as pool heaters or diving boards and rails.  However, there are only three manufacturers that sell nearly all the Pool Products necessary to operate and maintain a pool: Pentair Water Pool and Spa, Inc. ("Pentair"); Hayward Pool Products, Inc. ("Hayward"); and Zodiac Pool Systems, Inc. ("Zodiac").  Collectively, these three full-line Pool Products manufacturers represent more than 50 percent of sales at the wholesale level.

24.     Distributors generally carry all brands of Pool Products across all manufacturers to satisfy any and all orders from their Dealer customers.  It is necessary to sell the products of at

least one of the three full-line manufacturers to be able to compete effectively as a distributor. The products of the full-line manufacturers are "must have" products for wholesale distributors because of the volume of products they represent and the considerable consumer demand for their products.  A positive relationship with these and other manufacturers is critical to the success of a Pool Products distributor.

25.     In general, manufacturers are willing to sell their products through any credit worthy distributor that has a physical warehouse and personnel with knowledge of the pool industry.  Manufacturers typically prefer to have two or more distributors selling their products to ensure that their Dealer customers receive competitive service and prices.

26.     Manufacturers advertise and promote their products directly to Dealers to create pull-through demand at the distribution level, and also offer year-end rebates to distributors based on the volume of a distributor's purchases.  These year-end rebates represent a significant component of the ultimate price paid by distributors for Pool Products.  Failure to qualify for these rebates can have a substantial detrimental impact on a distributor's ability to compete on price.

## II.     PoolCorp's Monopoly in the Pool Product Distribution Market

27.     PoolCorp is the world's largest distributor of Pool Products, and operates over half of all pool distribution facilities in the United States.  According to Zacks Investment Research, PoolCorp has a dominant position, by reason of its market share, in the Pool Product Distribution Market.

28.     PoolCorp purchases Pool Products directly from manufacturers and then sells them to Pool Dealers, who then sell the Pool Products to retailers.  According to the same research firm, PoolCorp also capitalizes on the highly fragmented nature of the Pool Products

market by using its market power to secure products from manufacturers at better terms than its customers would be able to achieve on their own, thereby adding value to its customers' businesses.

29.     Unlike other distributors that operate in a few local markets or a specific region, PoolCorp is the only U.S. distributor to operate nationwide.  According to Zacks Investment Research, PoolCorp is the only truly national wholesale distributor focused on the Pool Product Distribution Market in the U.S.

30.     Through a series of acquisitions, PoolCorp has grown to operate over 200 distribution centers throughout the United States.  By way of comparison, the next largest U.S. distributor operates less than 40 centers.  In 2010, PoolCorp had roughly $1.5 billion in net sales revenue.

31.     PoolCorp has even greater monopoly power in numerous local geographic markets across the country, including, among others: (a) Alabama; (b) Louisiana; (c) Missouri; (d) Oklahoma; (e) Tennessee; and (f) Texas.  In these local markets, PoolCorp is the only or the most dominant distributor in the area, and has maintained a market share of approximately 80 percent or higher for at least the past five years.

32.     PoolCorp's dominance in these markets is enhanced by its status as the largest nationwide buyer of Pool Products, often representing 30 to 50 percent of a manufacturer's total sales.  PoolCorp obtains a significant competitive advantage in the downstream market by qualifying for large volume discounts from manufacturers that are not available to any other distributor.

33.    By virtue of the anticompetitive conduct hereinafter alleged, PoolCorp foreclosed new entrants from obtaining Pool Products directly from manufacturers, which created insurmountable barriers to entering the Pool Product Distribution Market.

**III.    PoolCorp's Exclusionary Practices**

34.    Beginning as early as 2003, PoolCorp has engaged in anticompetitive conduct by foreclosing access to essential inputs and impeding market entry by potential rivals.  PoolCorp's conduct is intended to and effectively does enable it to improperly maintain and enhance its monopoly power in the Pool Product Distribution Market.  PoolCorp's conduct has caused injury to competition and to consumers.

**A.    PoolCorp Engaged in an Aggressive Acquisition Strategy to Purchase Competitors and Obtain Unlawful Monopoly Power**

35.     PoolCorp willfully obtained its monopoly power through a strategy of aggressively acquiring its competitors.  Over a period of eight years, PoolCorp purchased the following seven competitors:

•    In August 2002, PoolCorp acquired Fort Wayne Pools, Inc. ("FWP"), a large regional pool distributor with operations in 16 states.  FWP was PoolCorp's then-largest, and sometimes only, competitor in numerous locations within the United States.

•    In late 2003, PoolCorp acquired the assets of Litehouse Products' distribution division.  Litehouse's primary business was the retail sales of swimming pool and other leisure products in the Midwest.

•    On January 3, 2005, PoolCorp acquired Latham International Ltd., an Albany, New York manufacturer of vinyl swimming pool liners, polymer and steel panels, steps and other swimming pool products, and its Canadian subsidiary, Pool Tech Distribution Inc.

•       In November 2005, PoolCorp also announced the acquisition of the assets of Direct Replacements, Inc., a Marietta, Georgia packaged pool distributor.

•       In March 2008, PoolCorp acquired National Pool Tile Group, Inc., a wholesale distributor of pool tile and composite pool finishes.

•       In October 2009, PoolCorp announced the acquisition of California pool and spa products distributor, General Pool & Spa Supply, Inc.

36.     Over a third of PoolCorp's cash since the company's inception has been used for these and other competitor acquisitions.  Consistent with PoolCorp's routine business practice, it aggressively sought to remove any competitors it perceived as a competitive threat.  PoolCorp not only acquired rivals it perceived as competitive threats, but thereafter closed them down.  For instance, soon after acquiring FWP, PoolCorp closed a FWP distribution facility in Baton Rouge, Louisiana.  This left PoolCorp as the only remaining distributor in the area, thereby enabling it to impose a five percent price increase.

**B.     PoolCorp Intimidated and Threatened Pool Product Manufacturers to Further Obtain Monopoly Power**

37.     PoolCorp not only dwarfs its nearest competitors in size, it uses its dominance to further enhance and solidify its monopoly power.

38.     In the Spring of 2003, a former Dealer with almost 20 years of experience in the Pool Products industry opened a distribution business in Baton Rouge, Louisiana.  PoolCorp responded to this new competition by notifying all major Pool Product manufacturers that it would stop dealing with any manufacturer that sold any of its products to the new entrant.  If those manufacturers failed to comply with its warnings, PoolCorp threatened to terminate not only its purchases and sales of their Pool Products in the local Baton Rouge area, but would stop selling those manufacturers' Pool Products throughout the entire country.

39.     As the manufacturers' largest customer, PoolCorp's threat was ominous.  No other distributor could replace the large volume of potential lost sales to PoolCorp, particularly in those markets where PoolCorp remains the only distributor.  In fact, according to the complaint issued by the FTC, the manufacturer's loss of sales to PoolCorp could be "catastrophic" to the financial viability of even the largest manufacturers of Pool Products.

40.     Without expending tens of millions of dollars to enter dozens of markets simultaneously, it is virtually impossible for any new potential Pool Products distributor to offer any economic incentive to manufacturers that could compete with the purchasing and distribution power of PoolCorp.

41.     As a result of Pool Corp's threats and demands, many manufacturers of Pool Products, including the three biggest manufacturers, Pentair, Hayward, and Zodiac, refused to sell Pool Products to the new entrant and canceled all pre-existing orders with the company.  In essence, PoolCorp effectively flexed its distribution muscle and forced this company to exit the market by locking in manufacturers of 70% of Pool Products.

42.     Without direct access to Pool Products, the new entrant's business ultimately failed in 2005.

43.     A new entrant simply cannot overcome PoolCorp's efforts to crush a potential competitor.  PoolCorp's exclusionary tactics in Louisiana were mirrored by its similar conduct in preventing competition throughout the country.  For instance, new entrants could not overcome PoolCorp's exclusionary tactics by purchasing Pool Products from other distributors, rather than directly from manufacturers.  As a general rule, distributors do not sell Pool Products to other distributors.  Even when possible, this alternative is not a viable long-term economic strategy because it substantially increases a distributor's costs and lessens its quality of service.

44.     For example, a new entrant distributor, who buys from another distributor forces the new entrant to pay transportation costs from that distributor's location, rather than receiving free shipping under well-established manufacturer programs.  Such distributor purchases are also at a marked-up price and do not qualify for key manufacturer year-end rebates.  These higher costs would prevent the new entrant from being able to compete aggressively on price. Additionally, without full control of its inventory, this attempted work-around hampers the new entrant's ability to provide timely and quality service to its Dealer customers.

45.     Because of PoolCorp's monopoly power and its nationwide pattern of exclusionary conduct, Pool Product manufacturers were faced with a Hobson's Choice: (1) permanently lose PoolCorp, their largest customer, or (2) accede to PoolCorp's threats and demands and refuse to sell Pool Products to smaller, less powerful distributors.

## IV.     PoolCorp's Anticompetitive Conduct Has Recently Been the Subject of A Federal Trade Commission Consent Decree

46.     On November 21, 2011, the FTC issued a complaint (the "FTC Complaint") against PoolCorp for violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.  See In the Matter of Pool Corporation, FTC File No. 101 0115.

47.     The FTC Complaint states:

This action addresses PoolCorp's exclusionary acts and practices in the market for the distribution of residential and commercial swimming pool products.  PoolCorp has unlawfully maintained its monopoly power by threatening to refuse to deal with any manufacturer that sells its pool products to a new distributor entering the market, thereby foreclosing potential rivals from an input necessary to compete.  PoolCorp's conduct deters and impedes entry, raises its rivals' costs, and results in higher prices, reduced output and less consumer choice.

48.     The FTC Complaint alleges that "beginning in 2003 and continuing to today, PoolCorp has implemented an exclusionary policy that effectively impeded entry by new distributors by preventing them from being able to purchase pool products directly from

manufacturers." Specifically, when a new distributor attempted to enter the market, PoolCorp threatened manufacturers that it would not deal with them if they also supplied the new entrant. PoolCorp threatened to terminate the purchase and sale of the manufacturer's pool products for all 200+ PoolCorp distribution centers located throughout the United States.  PoolCorp's policy did not exclude existing rivals from obtaining pool products from manufacturers.

### ANTICOMPETITIVE EFFECTS OF POOLCORP'S CONDUCT

49.     The effects of PoolCorp's anticompetitive and exclusionary acts have been to capture and/or maintain a large percentage of the relevant market, to substantially impair and foreclose competition from rivals from a substantial share of the relevant market, and to significantly raise barriers to entry for potential rivals.

50.     The acts and practices of PoolCorp as alleged herein have had the purpose, capacity, tendency, and effect of impairing the competitive effectiveness of rivals, raising its rivals' costs, and deterring and impeding market entry.  PoolCorp's unlawful conduct has contributed significantly to the enhancement and maintenance of its monopoly power.

51.     PoolCorp's conduct adversely affected competition and consumers by:

(a)     increasing or maintaining premium prices for Pool Products at artificially high levels;

(b)     reducing the output of Pool Products; (c) eliminating or significantly reducing price competition for Pool Products; (d) deterring, delaying and impeding the ability of actual or potential competitors to enter or to expand their sales in the Pool Product Distribution Market; and (e) reducing consumer choice among competing Pool Product distributors.

52.     There are no legitimate pro-competitive efficiencies that justify PoolCorp's conduct or outweigh its substantial anticompetitive effects.

53.     Absent PoolCorp's anticompetitive conduct and the substantial foreclosure and reduction of effective competition caused by such conduct, PoolCorp would have faced competition and reduced the prices it charged to purchasers of Pool Products.

54.     Moreover, had actual or potential Pool Product distributors not been prevented by PoolCorp's anticompetitive conduct from effectively competing in the market for such products, those actual or potential competitors would have sold more Pool Products, gained a larger market share, and achieved economies of scale and scope that could have further driven down prices for Pool Products in the marketplace.

55.     By unlawfully excluding and impairing competition, PoolCorp's conduct has caused Plaintiff and other Class members to pay more for Pool Products than they otherwise would have paid absent PoolCorp's illegal, exclusionary conduct.

56.     As a result of PoolCorp's unlawful, anticompetitive conduct, Plaintiff and members of the Class were compelled to pay, and did pay, artificially inflated prices for the Pool Products they purchased.

## DAMAGES

57.     Had potential competitors been able to prepare to enter, enter and/or remain in the Pool Product Distribution Market unimpeded by PoolCorp's illegal conduct, Plaintiff and other members of the Class would have been able to, inter alia, purchase Pool Products for lower prices.

58.     Because of PoolCorp's anticompetitive practices, Plaintiff and other Class members who purchased Pool Products paid artificially high and supra-competitive prices.

59.     Plaintiff and members of the Class have, as a consequence, sustained losses and damage to their business and property in the form of the payment of overcharges for Pool

13

Products.  The full amount of such damages will be calculated after discovery and upon proof at

trial.

## CLASS ACTION ALLEGATIONS

60.    Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure

23(a) and (b)(3), on its own behalf and as a representative of the following class of persons and

entities (the "Class"):

> All persons or entities that purchased Pool Products directly from any Defendant
> at any time between January 1, 2003 and the present (the "Class Period").

> Excluded from the Class are Defendants and their subsidiaries, parents, or
> affiliates, whether or not named as a Defendant in this Complaint, and
> government entities.

61.    The Class is individually so numerous that joinder of all members is

impracticable.  While the exact number of members of the Class is unknown to Plaintiff at this

time, based on the nature of the trade and commerce involved, Plaintiff reasonably believes that

there are at least hundreds of members in the Class and that their identities can be learned from

records in PoolCorp's possession, custody or control.

62.    Class members are geographically dispersed throughout the United States.

63.    Plaintiff's claims are typical of the claims of the other members of the Class.

64.    Plaintiff and the members of the Class have all sustained damage in that, during

the Class Period, they purchased Pool Products directly from PoolCorp at artificially maintained,

supra-competitive prices, established by PoolCorp's actions in connection with the

anticompetitive behavior alleged herein.  PoolCorp's anticompetitive conduct, the effects of such

violations, and the relief sought are all issues or questions that are common to Plaintiff and the

other Class members.

65.    Plaintiff will fairly and adequately protect the interests of the members of the

Class and has retained counsel competent and experienced in class action and antitrust litigation. Plaintiff's interests are coincident with, and not antagonistic to, the interests of the other Class members.

66.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.

67.     The questions of law and fact common to the Class include, but are not limited to:

(a)     whether the Pool Product Distribution Market in the United States constitutes a relevant market;

(b)     whether the Pool Product Distribution Market in the following regional markets constitute relevant alternative markets: (a) Alabama; (b) California; (c) Florida; (d) Louisiana; (e) Missouri; (f) New York; (g) Oklahoma; (h) Tennessee; and (i) Texas;

(c)     whether PoolCorp possesses monopoly power in the Pool Product Distribution Market;

(d)     whether, through the conduct alleged herein, PoolCorp willfully acquired or maintained or enhanced its monopoly power in the Pool Product Distribution Market;

(e)     whether, through the conduct alleged herein, PoolCorp attempted to monopolize the Pool Product Distribution Market;

(f)     whether PoolCorp monopolized the relevant market by engaging in unlawful exclusionary conduct to acquire or maintain or enhance its monopoly power in the Pool Product Distribution Market;

(g)     whether PoolCorp entered into exclusionary agreements to unlawfully acquire or maintain or enhance its monopoly power in the Pool Product Distribution Market;

(h)     whether, and to what extent, PoolCorp's conduct caused Plaintiff and Class members to pay supra-competitive prices for Pool Products and, thereby, suffer antitrust injuries; and

(i)     whether Plaintiff and Class members are entitled to damages and, if so, the appropriate measure of damages.

68.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Class is impracticable.

69.     The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and the parties, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class.  A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.  There will be no material difficulty in the management of this action as a class action on behalf of the Class.

## FRAUDULENT CONCEALMENT

70.     Plaintiff and the members of the Class did not discover, and could not discover through the exercise of reasonable diligence, the existence of the unlawful, anticompetitive conduct and exclusionary tactics alleged herein until November 2011 when the FTC investigation and related consent decree was first made public.

71.     Because PoolCorp's agreements, understandings, and unlawful actions were not made public until November 2011, before that time, Plaintiff and members of the Class were unaware of PoolCorp's unlawful conduct, and they did not know before then that they were paying supra-competitive prices for Pool Products throughout the United States during the Class Period.

72.     The affirmative acts of PoolCorp alleged herein, including the unlawful, anticompetitive conduct, were wrongfully concealed and carried out in a manner that precluded detection.

73.     Pool Products are not exempt from antitrust regulation, and thus, before November 2011, Plaintiff reasonably considered the Pool Product Distribution Market to be a competitive industry.  Accordingly, a reasonable person under the circumstances would not have been put on notice to investigate the lawfulness or legitimacy of PoolCorp's Pool Products prices before November 2011.

74.     Plaintiff and the members of the Class could not have discovered the alleged monopolization and/or attempted monopolization at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by PoolCorp to avoid detection of, and fraudulently conceal, its anticompetitive conduct and exclusionary tactics.

75.     Because the alleged unlawful, anticompetitive conduct and exclusionary tactics were affirmatively concealed by PoolCorp, Plaintiff and members of the Class had no knowledge of any facts or information that would have caused a reasonably diligent person to investigate whether PoolCorp was engaging in such unlawful, anticompetitive conduct and exclusionary tactics until November 2011, when reports of the FTC's investigation of such conduct were first publicly disseminated.

76.     As a result of PoolCorp's fraudulent concealment, the running of any statute of limitations has been tolled with respect to any claims that Plaintiff and the members of the Class have alleged in this Complaint.

**FIRST CLAIM FOR RELIEF**
**Monopolization in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2**
**(on behalf of Plaintiff and the Class)**

77.     Plaintiff incorporates by reference the preceding allegations.

78.     PoolCorp acquired, willfully maintained and unlawfully exercised monopoly power in the relevant market through the exclusionary, anticompetitive conduct set forth above, including, but not limited to: (1) entering into exclusive dealing arrangements with manufacturers of Pool Products; (2) adopting and publicly announcing a general policy of refusing to deal with manufacturers that sold Pool Products to competing Pool Product distributors; (3) threatening to refuse to buy Pool Products from manufacturers that sold Pool Products to other distributors; and (4) engaging in an aggressive strategy of acquiring competitor Pool Product distributors.

79.     PoolCorp has effectively excluded competition from a significant portion of the relevant market, unlawfully acquired and expanded its dominant market share in the relevant market, and profited from its anticompetitive conduct by maintaining prices at artificially high levels and by otherwise reaping the benefits of its illegally obtained and maintained monopoly power.

80.     There is no legitimate business justification for PoolCorp's anticompetitive actions and the conduct through which it acquired and maintained its monopoly power in the relevant market.  The anticompetitive effects of PoolCorp conduct far outweigh any conceivable pro-competitive benefit or justification.  Even if such justification had existed, any possible pro-competitive benefits could have been obtained by less restrictive alternatives.

81.     As a direct and proximate result of PoolCorp's anticompetitive conduct, Plaintiff and members of the Class have been injured in their business or property by PoolCorp's

unlawful monopolization of the relevant market.  Plaintiff and the other members of the Class have been forced to pay artificially high, supra-competitive prices for Pool Products, prices higher than they would have been absent PoolCorp's unlawful monopolization of the relevant market.

## SECOND CLAIM FOR RELIEF
**Attempted Monopolization in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2**
**(on behalf of Plaintiff and the Class)**

82.     Plaintiff incorporates by reference the preceding allegations.

83.     PoolCorp unlawfully attempted to acquire monopoly power in the relevant market during the Class Period, with the intention of doing so, through the exclusionary, anticompetitive conduct set forth above, including, but not limited to: (1) entering into exclusive dealing arrangements with manufacturers of Pool Products; (2) adopting and publicly announcing a general policy of refusing to deal with manufacturers that sold Pool Products to competing Pool Product distributors; (3) threatening to refuse to buy Pool Products from manufacturers that sold Pool Products to other distributors; and (4) engaging in an aggressive strategy of acquiring competing Pool Product distributors.

84.     To the extent that PoolCorp has not already acquired and maintained monopoly power in the relevant market during the Class Period, the conduct described herein resulted in a dangerous probability it would acquire and maintain such monopoly power.

85.     PoolCorp has excluded actual and potential competition from the relevant market and, by unlawfully limiting the market shares of rivals; it has reaped the financial benefits of its attempt to acquire monopoly power.

86.     There is no legitimate business justification for PoolCorp's actions and the

19

conduct through which it attempted to acquire monopoly power in the relevant market.  The anticompetitive effects of PoolCorp's conduct far outweigh any conceivable pro-competitive benefit or justification.  Even if such justifications had existed, any possible pro-competitive benefits could have been obtained by less restrictive alternatives.

87.    As a direct and proximate result of PoolCorp's anticompetitive conduct, Plaintiff and members of the Class have been injured in their business or property by PoolCorp's attempt to monopolize the relevant market.  Plaintiff and the other members of the Class have been forced to pay artificially high, supra-competitive prices for Pool Products, prices higher than they would have been absent PoolCorp's attempt to monopolize the relevant market.

## PRAYER FOR RELIEF

Accordingly, Plaintiff respectfully requests the following relief:

A.    Certification of the Class defined in this Complaint pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), and designating Plaintiff as the representative for the Class and its counsel as counsel for the Class;

B.    PoolCorp's actions described herein be adjudged and decreed to be in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;

C.    Plaintiff and the Class recover damages, as provided by law, that they are determined to have sustained, and that judgment in favor of Plaintiff and the Class be entered against Defendants, together with prejudgment interest at the maximum rate allowable by law;

D.    Plaintiff and the Class recover the costs of this suit, including reasonable attorneys' fees, as provided by law; and

E.    Plaintiff and the Class be granted such other, further and different relief as the nature of the case may require or as may seem just and proper to this Court.

**JURY DEMAND**

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury trial of all claims asserted in this Complaint so triable.


Dated: New Orleans, Louisiana
       December 19, 2011


By:   /s/ Russ Herman
      Russ Herman, Esq. (La. Bar No. 6819)
      Stephen Herman, Esq. (La. Bar No. 23129)
      Steven Lane, Esq. (La. Bar No. 7554)
      Soren Gisleson, Esq. (La. Bar No. 26302)
      **HERMAN, HERMAN, KATZ &**
      **COTLAR LLP**
      820 O'Keefe Avenue
      New Orleans, Louisiana 70113
      Tel: (504) 581-4982
      rherman@hhkc.com
      sherman@hhkc.com
      slane@hhkc.com
      sgisleson@hhkc.com


      Ronald J. Aranoff, Esq.
      Michael S. Bigin, Esq.
      Dana Statsky Smith, Esq.
      **BERNSTEIN LIEBHARD LLP**
      10 East 40th Street, 22nd Floor
      New York, NY 10016
      (212) 779-1414
      aranoff@bernlieb.com
      bigin@bernlieb.com
      dsmith@bernlieb.com

      *Attorneys for Plaintiff and the Class*